## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

REPEAT CONSULTANTS
INTERNATIONAL, LLC,

       *Plaintiff*,

  v.

THE UNITED STATES,

       *Defendant.*

Case No.: 24-619
Judge Kathryn C. Davis

████████████████

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE ADMINSTRATIVE RECORD AND RESPONSE TO DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Dated: June 17, 2024

*Of Counsel*

David B. Robbins
Noah B. Bleicher
Nathaniel E. Castellano
Ginsey V. Kramarczyk
JENNER & BLOCK LLP

Respectfully submitted,

/s/ *Moshe B. Broder*
Moshe B. Broder (Counsel of Record)
Jenner & Block LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
(202) 637-6334
mbroder@jenner.com

*Counsel to Repeat Consultants International, LLC*

# TABLE OF CONTENTS

I.     NO PORTION OF RCI's PROTEST IS MOOT ................................................................ 1

II.    THE PROPOSALS CONTAIN MATERIAL MISREPRESENTATIONS ...................... 3

III.   DLA CONDUCTED AN IRRATIONAL TECHNICAL EVALUATION....................... 7

IV.   THE CONTRACTING OFFICER'S PRICE REALISM ANALYSIS IS NOT RATIONAL ............................................................................................................. 9

      A.     Comparing One or Two Prices Was Not a Rational Realism Methodology ........... 9

      B.     The Contracting Officer Irrationally Analyzed the Iraq CLINs............................11

      C.     Including Government-mandated Plug Numbers Was Not Rational ....................12

      D.     GAO's Advisory Opinion Is Unavailing..............................................................13

V.     THE CORRECTIVE ACTION INVESTIGATION AND RESULTING RESPONSIBILITY DETERMINATION WERE NOT RATIONAL ........................... 13

      A.     A Contracting Officer's Responsibility Determination Is Not Immune from Review.........................................................................................................13

      B.     The Contracting Officer's Arbitrary Corrective Action Investigation Fails APA Review ........................................................................................................14

           1.     The corrective action investigation was arbitrary under the *State Farm* standard because the contracting officer "entirely failed to consider an important aspect of the problem.".......................................................... 16

           2.     The contracting officer's reliance on self-serving statements to justify similarities was irrational. ....................................................................... 18

VI.   PREJUDICE ................................................................................................................ 20

VII.   REMEDY...................................................................................................................... 22

VIII.   CONCLUSION.............................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BAE Sys. Norfolk Ship Repair, Inc. v. United States,*
    163 Fed. Cl. 217 (2022) ................................................................................................12

*Caddell Constr. Co. v. United States,*
    111 Fed. Cl. 49 (2013) ..................................................................................................22

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977) ...........7

*Connected Glob. Sols., LLC v. United States,*
    159 Fed. Cl. 801 (2022) ............................................................................................4, 6

*Dep't of Com. v. New York,*
    588 U.S. 752 (2019) .....................................................................................................15

*DigiFlight, Inc. v. United States,*
    165 Fed. Cl. 588 (2023) ...........................................................................................9, 10

*eBay, Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006) .....................................................................................................22

*Fla. Power & Light Co. v. Lorion,*
    470 U.S. 729 (1985) .......................................................................................................8

*Glob. K9 Prot. Grp., LLC v. United States,*
    169 Fed. Cl. 116 (2023) .................................................................................................5

*Golden IT, LLC v. United States,*
    157 Fed. Cl. 680 (2022) (Solomson, J.) ....................................................................4, 5

*Heckler v. Chaney,*
    470 U.S. 821 (1985) .....................................................................................................15

*IAP Worldwide Servs., Inc. v. United States,*
    160 Fed. Cl. 57 (2022) .................................................................................................21

*Impresa Construzioni Geom. Domenico Garufi v. United States,*
    238 F.3d 1324 (Fed. Cir. 2001) .........................................................................13, 14, 15

*Mil-Mar Century Corp. v. United States,*
    111 Fed. Cl. 508 (2013) ...............................................................................................10

i

*Mitchco Int'l, Inc. v. United States,*
    26 F.4th 1373 (Fed. Cir. 2022) ........................................................................1, 2

*Mortg. Contracting Servs., LLC v. United States,*
    153 Fed. Cl. 89 (2021) ....................................................................................5, 7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ...........................................................................8, 16, 17, 18

*Oak Grove Techs., LLC v. United States,*
    155 Fed. Cl. 84 (2021), *appeal docketed*, No. 22-1556 (Fed. Cir. Mar. 22,
    2022) ...............................................................................................................5, 17

*Oracle America, Inc. v. United States,*
    975 F.3d 1279 (Fed. Cir. 2020) ...........................................................................15

*Rockwell Collins, Inc. v. United States,*
    169 Fed. Cl. 436 (2024) .......................................................................................12

*SAGAM Securite Senegal v. United States,*
    No. 2021-2279, 2023 WL 6632915 (Fed. Cir. Oct. 12, 2023) ...........................15

*Tinton Falls Lodging Realty, LLC v. United States,*
    800 F.3d 1353 (Fed. Cir. 2015) ......................................................................20, 21

**Statutes**

28 U.S.C. § 1491(b)(2) ...................................................................................................2

28 U.S.C. § 1491(b)(4) .................................................................................................15

**Other Authorities**

33 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    8347, Westlaw (2d ed. database updated June 2024) ............................................1

Exclusive, *Black's Law Dictionary* (11th ed. 2019) .......................................................4

FAR 9.104–1(c) .............................................................................................................20

Pursuant to the Court's April 26, 2024, Scheduling Order (ECF No. 10) and RCFC 52.1(c), Plaintiff RCI respectfully submits this reply brief in support of RCI's MJAR (ECF No. 24) and in opposition to the Department of Justice's ("DOJ") Cross-MJAR (ECF No. 27).[1]

## I.    NO PORTION OF RCI's PROTEST IS MOOT

The United States argues that a portion of RCI's protest is moot based on a contracting officer's declaration asserting that ███████████████████████████  The Government's mootness strategy fails for at least three reasons.

***First***, the Government has failed to meet its burden to establish mootness.  "The party arguing that a case has become moot bears the burden of coming forward with the subsequent events that have produced that alleged result." *Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1378 (Fed. Cir. 2022) (quoting *Hyosung TNS Inc. v. Int'l Trade Comm'n*, 926 F.3d 1353, 1357 (Fed. Cir. 2019) (internal quotation marks omitted)).  It is a high burden:

> Where events after the commencement of a lawsuit deprive the plaintiff of a personal stake in the outcome, the case must be dismissed as moot. The standard for determining that a plaintiff has lost all personal stake in this manner is very high. Mootness demands that it be impossible for a court to grant any effectual relief whatever to the prevailing party.  Any concrete interest, however small, in the outcome of the litigation is sufficient to prevent it from becoming moot. Even nominal damages for a completed violation of a legal right can suffice.

33 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8347, Westlaw (2d ed. database updated June 2024) (footnotes and alterations omitted).

The only support Defendant offers is a vague declaration from the contracting officer that describes ████████████████████████████████████████████████ and an email asserting that ███████████████████████████████████████████ ███████████████████████ (DOJ MJAR at 12-13, 18; ECF 27-1.)  The contracting officer does

---

[1] This brief adopts defined terms from RCI's MJAR.

███████████████████████████████████████████████████

not opine as to ███████████████████████████████, the cause of the ████████████ ███████, nor whether ███████████████████████████████████████. The Government's hazy characterizations are not enough to definitively preclude the possibility that ████████████████████████████████████████████.

   ***Second***, this Court is still able to provide a meaningful remedy for the flawed contract awards to ███████████████████. The Government argues: "████████████████████ ██████████████████, its challenge to the contract award ████████ is now moot." (DOJ MJAR at 18.) By the time this Court receives briefing, hears argument, and issues a decision and order remanding the procurement back to DLA—months from now—there is a distinct likelihood that ███████████████████████████████████. (*See* Ex. 2.) The ████████████████████████████████████████████ ██████████████████████████████ is fluid and constantly shifting; the fact that ██ ██████████████████████████ while this protest is pending does not make the case moot.

   At a minimum, this Court has broad authority to award RCI proposal preparation costs with respect to the ███████████ 28 U.S.C. § 1491(b)(2). The prospect of remedial proposal costs alone defeats mootness. *Mitchco*, 26 F.4th at 1379 ("Mitchco, if successful, would be entitled to bid preparation and proposal costs—a situation that renders the case not moot").

   ***Third***, even if some aspect of RCI's claims could be moot, that has no impact on the scope of issues before the Court. The Government's mootness argument impacts only RCI's challenges to ███████████. But each of RCI's merits arguments challenge DLA's evaluation and award with respect to both ███████████████████████ Even if RCI's ██████ CLIN challenges were moot, the Court would still have to address the same issues with respect to the ████ CLINs.

████████████████████████████████████████

And, as the Government acknowledges, RCI's prejudice with respect to the ███ CLINs implicates ████s eligibility for award of the ███ CLINs. (DOJ MJAR at 51–52.) Accordingly, even if RCI's challenge to the ███ CLINs were moot—the Court would still have to address every one of RCI's merits arguments with respect to the ███ CLINs *and* address RCI's arguments challenging █████ eligibility for award as relevant to prejudice. The United States' mootness argument does nothing to limit the scope of arguments before the parties and the Court.

## II.    THE PROPOSALS CONTAIN MATERIAL MISREPRESENTATIONS

In its Complaint and MJAR, RCI raised two separate but related challenges: (i) that the Hawax and Shanica proposals contain material misrepresentations as to the nature of the offerors' sources of fuel supply; and (ii) that DLA irrationally failed to recognize that the proposals were technically unacceptable for failure to provide valid letters of source commitment for those same fuel suppliers. The Government's response blends the two issues together, conflating the unique rules applicable to alleged material misrepresentations.

Defendant proclaims: "Dressing up the claim as a 'material misrepresentation' does not change the statutory standard of review … or the binding precedent that matters such as technical ratings involve the minutia of the procurement process that a court will not second guess." (DOJ MJAR at 26–27 (cleaned up).) Judge Tapp recently rejected the same argument—recognizing that alleged proposal misrepresentations are fundamentally different than garden variety challenges to an agency's technical ratings, because the focus of the Court's analysis shifts from the subjective rationality of the agency evaluators to the objective falsity of the proposal itself:

> To succeed on its [misrepresentation] claims, [the protester] must go further than simply demonstrating the arbitrariness and capriciousness of agency action…. When material misrepresentation in the bidding process is alleged, courts do not examine the subjective mindset of the awarding agency, but "instead look to whether or not the statement itself constitutes misrepresentation—something that

is determinable the moment that it is submitted for agency consideration—and then whether or not the agency relied on that statement in making its award decision.

*Connected Glob. Sols., LLC v. United States*, 159 Fed. Cl. 801, 805–06 (2022) (citation omitted); *see also Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 700–01 (2022) (Solomson, J.) (recognizing distinction between standard applied to material misrepresentation claims and traditional bid protest claims challenging the rationality of an agency's evaluation findings).

Defendant cannot defeat RCI's material misrepresentation claims by asserting that the evaluation ratings DLA assigned were rational. Instead, RCI's material misrepresentation claims require the Court to consider (i) whether the Hawax and Shanica proposals contain false statements and, (ii) if so, whether those false statements were material to the award decision.[2]

RCI explained that the Shanica and Hawax proposals necessarily contain false statements, because ███████████████████████████████████████████████████████, and it is impossible ███████████████████████████████████████████████████████████████. (RCI MJAR at 17–21.) Defendant does not reconcile how these ████████████. Instead, Defendant points out that ████████████████████████████████████████████████████████████████. (DOJ MJAR at 23–24). But that only multiplies the number of misrepresentations in the proposals before DLA.

Defendant also nitpicks between an "████████████" and the ████████████ here. But the key word is "exclusive" which denotes something that is "[l]imited to a particular person, group, entity, or thing," "[u]nable to be true if something else is true," and "[w]hole; undivided." Exclusive, *Black's Law Dictionary* (11th ed. 2019). Defendant offers no plausible interpretation

---

[2] Defendant does not argue that intent is a necessary element. (*See* RCI MJAR at 16–17.)

4

████████████████████████████████████████████████

of the 

█████ without concluding that at least one of the proposals contains a false statement.

Turning to materiality, Defendant argues that the Solicitation did not require █████

█████, so it does not matter if the proposals misrepresent █████ (DOJ MJAR at

25–26.)  But Defendant does not dispute that once Hawax and Shanica proposed to █████

█████, they were obligated to █████

█████.  (RCI MJAR at 17–18.)  Nor does Defendant dispute that █████

█████

█████—the legal standard for a material solicitation term, clearly satisfied here.  *Mortg.*

*Contracting Servs., LLC v. United States*, 153 Fed. Cl. 89, 142 (2021).

By the Solicitation's rules, the letters of commitment were mandatory components of the

Shanica and Hawax proposals, and DLA necessarily relied on the existence of those letters of

commitment to find Shanica and Hawax technically acceptable.  Those letters of commitment are

false, and without them the Hawax and Shanica proposals would fail against mandatory

Solicitation requirements.  While it is possible that Hawax and Shanica could have been eligible

for award if they had submitted different letters of commitment █████

█████—that is not the course they chose to take.  When an offeror submits a false letter of

commitment in response to a mandatory Solicitation requirement and then wins a contract—the

false letter of commitment is material to the award.[3]

---

[3] *Oak Grove Techs., LLC v. United States*, 155 Fed. Cl. 84, 102–03 (2021) (solicitation requirement to provide teaming agreements was material), *appeal docketed*, No. 22-1556 (Fed. Cir. Mar. 22, 2022); *Golden IT, LLC*, 157 Fed. Cl. at 700 n.32 ("where an agency's contract award is based on a proposal's material misrepresentation, the award is *per se* inconsistent with a solicitation's requirements and, thus, is contrary to law."); *Glob. K9 Prot. Grp., LLC v. United States*, 169 Fed. Cl. 116, 145 (2023) ("Without its misrepresentations, K2 completely lacked relevant successful past performance. The facts and circumstances surrounding these express misstatements require a

\*        \*        \*

The administrative record here contains all the evidence needed for the Court to conclude that the Hawax and Shanica proposals contain material misrepresentations. To the extent the Court is not able to resolve Count I on the current record—due to, for example, uncertainty as to falsity, materiality, or intent—the cleanest answer is to remand this procurement back to DLA to answer those questions in the first instance. The alternative is to grant RCI's request for limited discovery—as a long line of this Court's decisions recognize is appropriate and often necessary to resolve allegations of material misrepresentation. (RCI MJAR at 21.) RCI does not dispute that discovery in this case would pose challenges given the international setting, which is why remand with instructions for DLA to investigate its own contractors outside the litigation context is the most efficient solution. However, Defendant cannot invoke the inconvenience of international discovery to avoid resolution of alleged material misrepresentation:

> The Court balances the need for expedient resolution with the parties' burden to establish falsehoods in the bidding process. ARC has alleged that HomeSafe made a material misrepresentation in its proposal and provided at least some evidence to support that claim; whether ARC's claim is true remains to be seen. Whether HomeSafe's representation was in fact false is contingent on information that will necessarily not appear in the Administrative Record. . . . ARC bears the burden of proof in this instance, but *this Court will not blockade ARC's pursuit of information necessary to meet that burden*. ARC's material misrepresentation claim necessitates consideration of evidence that one could not reasonably expect to be contained in the administrative record.

*Connected Glob.*, 159 Fed. Cl. at 806 (citations omitted) (granting-in-part discovery request).[4]

---

finding they were intentional—K2 intended to represent its past performance was sufficient to warrant contract award when this was not the case. These misrepresentations are therefore material." (internal quotation marks and citations omitted)).

[4] The Government's explanation of the "time-consuming" process for obtaining discovery from two Iraqi-based refineries ignores the availability of discovery through more expedient means in the United States and United Kingdom. Discovery can be obtained efficiently from the refineries through ordinary discovery procedures in the United States and through the Hague Convention in the United Kingdom, which is a party to the Hague Evidence Convention. Nor does the

## III.    DLA CONDUCTED AN IRRATIONAL TECHNICAL EVALUATION

Count II of RCI's Complaint turns on the same facts surrounding Hawax and Shanica's ████████████████████████████████████ but as a challenge to DLA's technical evaluation, the focus shifts to whether DLA's evaluation was reasonable based on the information before DLA at the time of the evaluation.[5]  As Defendant points out, at least ██ offerors submitted proposals to DLA claiming ███████████████████████████ ████████. (DOJ MJAR at 23–24.)

Again, once Shanica and Hawax proposed ██████████████████████ ████████████ the Solicitation mandated that Shanica and Hawax provide associated letters of commitment.  (RCI MJAR at 17–18.)  That is, the letters of commitment were mandatory under the Solicitation, and that mandatory requirement is material, as the letters of source commitment necessarily impact the price, quantity, quality, and delivery of the fuel offerors proposed to provide under the Solicitation.  *Mortg. Contracting Servs.*, 153 Fed. Cl. at 142.

Faced with █████████████████████████, it was irrational for the contracting officer to find Hawax and Shanica technically acceptable—without any documented analysis of the inconsistency in the record, contemporaneous or otherwise.  The absence of an ████████ supply commitment amounts to no supply commitment, not a ████████ supply commitment.  It is irrational to assume that what was presented as an ████████████ commitment would stand on its own as simply a "supply commitment."  Indeed, "████████"

---

Government dispute that the important information RCI seeks from the refineries and offerors will ultimately be available through letters of request in Iraq.

[5] "[R]eview is to be based on the full administrative record that was before the Secretary at the time he made his decision."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977).

means ███████████████████████████████ cannot

coexist.

  It is not enough for Defendant to simply assert that ████████████ were not

required, because the record does not contain any evidence that Shanica or Hawax have ██

████████████████. DLA also cannot unilaterally revise the Hawax and

Shanica letters of commitment to read ██████████████████████

██████ when the letters of commitment in the record clearly claim ███████████

████. Nor should this Court accept DOJ's invitation to read such interpretations into the record.

Without the impossible ██████████████, neither Hawax nor Shanica have

provided DLA with any evidence that they have any supply commitment from the ████████

██████, leaving their proposals technically unacceptable.

  It was irrational and arbitrary for the contracting officer to find the Hawax and Shanica

proposals technically acceptable on this record, because by ignoring the ███████████

████████████, the contracting officer failed to "examine the relevant data and articulate

a satisfactory explanation for its action" and "entirely failed to consider an important aspect of the

problem"—the hallmarks of arbitrary agency action. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v.

State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

  At a minimum, DLA's certified record does not coherently explain how DLA might have

rationally concluded that the Hawax and Shanica proposals are technically acceptable, which is

yet another reason to remand the procurement back to DLA. *See Fla. Power & Light Co. v. Lorion*,

470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if

the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate

the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.")

## IV.    THE CONTRACTING OFFICER'S PRICE REALISM ANALYSIS IS NOT RATIONAL

### A.    Comparing One or Two Prices Was Not a Rational Realism Methodology.

The contracting officer erred in concluding that a price was realistic simply because of its proximity to one or two higher prices.  (RCI MJAR at 25–28.)  Regarding the Syria CLINs, the Government maintains that the contracting officer reasonably assessed price realism because the price difference between the only two technically acceptable proposals was not "significant." (DOJ MJAR at 31–34.)

The Government misunderstands RCI's position.  Price comparison may in some circumstances be a "valid methodology," but the methodology is not rationally applied here because the entirety of the Government's assessment consists of comparing a price against only one or two other prices.  "Again, a method itself not only needs to be rational, but the *application* of that method must be rational as well."  *DigiFlight, Inc. v. United States*, 165 Fed. Cl. 588, 601 (2023) (emphasis in original).  The Government's "simple assertion that comparing offerors' prices is an ***acceptable*** method for conducting a price realism analysis is largely non-responsive to Plaintiff's argument and does nothing to bolster the agency's irrational conclusion." *Id.*

As the Court found in *DigiFlight*, it is irrational to conclude that a price is not too low solely because it is less than one or two other prices.  There, the Court distinguished prior precedent (relied upon by the Government here) because those cases involved a price realism comparison between many price proposals as well as other methodologies. *Id.* at 600.  *Afghan American Army Services* is inapposite because that price realism analysis compared ***21 prices*** and an independent government estimate. *Id.* at 600 n.4 (citing *Afghan Am. Army Servs. Corp. v. United States*, 90

9

Fed. Cl. 341, 358 (2009).)  Similarly, in *Mil-Mar Century **seven offerors*** submitted proposals, and

the price realism analysis was thorough and included a comparison of discrete cost components:

> the agency did far more than just look at two sets of pricing proposals and conclude
> that multiple companies offering low composite rates suggested there was no
> evidence of an attempt to offer unrealistically low prices as a strategy to receive the
> award. Instead, in *Mil-Mar Century Corp.*, "the Agency compared [the awardee's]
> estimated material costs to those of the other offerors and the IGCE, evaluated [the
> awardee's] estimated prices of the engine, tank and frame, and compared [the
> awardee's] proposed labor hours to those of the other offerors." 111 Fed. Cl. at 542
> (internal citations omitted).  Simply put, the apparently thorough price realism
> analysis in *Mil-Mar Century Corp.* does not compare to the conclusory one
> conducted here, especially considering the irrationality of the conclusion drawn by
> the agency.

*Id.* at 601 (alterations in original) (distinguishing *Mil-Mar Century Corp. v. United States*, 111

Fed. Cl. 508, 542 (2013).)

The Government maintains that RCI's argument "makes no sense" because the sole

comparator for the Syria CLINs is "*RCI's own price*" and thus RCI's argument would disqualify

RCI's proposal.  (DOJ MJAR at 32 (emphasis in original).)  But the contracting officer's exclusive

reliance on comparing two prices does not render RCI's price unrealistic.  RCI's price is higher

than Shanica's; RCI's position is that Shanica's price is unrealistically low, while RCI's higher

price is realistic—which RCI is in a position to know as the incumbent provider of essentially the

same services.  (AR, Tab 48 at 1573–74.)  A simple price comparison between two prices, on its

own, is not rational because the higher price *could* be unrealistic, but that does not mean that the

higher price is in fact unrealistic.  It simply illustrates that the methodology is unreliable.

The Government attempts to distinguish *DigiFlight* because the prices there were below a

government estimate, whereas here Shanica's and RCI's prices were "not below any independent

government cost estimate."  (DOJ MJAR at 33.)  This is a distinction without a difference; there

need not be a higher government estimate to "cast doubt" on the application of this methodology.

(*See* DOJ MJAR at 37.)  Particularly in the context of a LPTA procurement where price is the basis for award and offerors had every incentive to underbid competitors, the contracting officer never considered whether both Shanica and Hawax submitted unrealistically low prices and instead rested the entirety of the price realism analysis on the relative difference between prices.

### B.    The Contracting Officer Irrationally Analyzed the Iraq CLINs.

The Government next contends that DLA rationally performed a price realism evaluation for CLINs 15–17.  (DOJ MJAR at 34–38.)  Here, the Government marches through the contracting officer's inscrutable analysis as if repeating it again sheds more light on what the contracting officer meant when stating that Hawax's proposed differentials went "above and beyond what it reasonably expects to pay" or when vaguely claiming that proposed differentials "***generally*** captures the costs (beyond fuel), expenses, and profit an offeror wishes to build into its price." (DOJ MJAR at 34–35 citing AR, Tab 37 at 1295 (emphasis added).)  The Government also fails to expound on the contracting officer's vague terminology such as "modest range" or "adequate margin."  (AR, Tab 37 at 1295.)  Indeed, a finding that a "margin" is "adequate" necessarily implies the existence of a range and a comparison to some metric, below which a price would be considered inadequate.   Yet the contracting officer's yardstick remains elusive, presumably because none was used.  Nor does the Government justify the contracting officer's circular and conclusory reasoning.  (DOJ MJAR at 35 citing AR, Tab 37 at 1295 ("Hawax's differential does not make its price so low as to suggest it does not understand the requirement").)

The Government even invokes the contracting officer's unremarkable observation that prices are "expected to vary" because each offeror has different operational efficiencies.  (DOJ MJAR at 38 n.11 (citing AR, Tab 37 at 1293).)  Of course, prices should not be identical; each

offeror has unique cost structures and presumably developed prices independently. This truism does not explain why Shanica's and Hawax's low prices do not present risk.

Ultimately, the realism evaluation is not rational because the Government failed to meaningfully assess prices for risk or demonstrating a lack of understanding of requirements. The contracting officer did not document any assessment of whether the differentials proposed by each offeror were sufficient to perform the requirements or consistent with technical approaches.

### C.    Including Government-mandated Plug Numbers Was Not Rational.

RCI explained that the contracting officer failed to reasonably assess proposed differentials, the sole price variable that contractors could control, and also unreasonably minimized the stark differences between differentials by including government-mandated plug numbers. (RCI MJAR at 29–32.) In response, the Government argues that RCI merely disagrees with the contracting officer's judgment, apparently contending that offerors must account for expected variability in fuel price by including potential fuel costs within the proposed differentials.

As an initial matter, differentials were not intended to include fuel costs. (*See* AR, Tab 37 at 1295 ("The differential/expenses figure generally captures the costs (***beyond fuel***), expenses, and profit").) If anything, the notion that offerors might hedge fuel cost fluctuation by including additional fuel cost within differentials only increases the need to perform a price realism assessment that excludes government-mandated plug numbers. Regardless, the Government's newly discovered rationale has no basis in the contemporaneous record and was not before the contracting officer when performing the price realism analysis. DOJ cannot introduce new rationales to this Court that DLA might have but did not actually invoke at the time of its evaluation. *E.g.*, *Rockwell Collins, Inc. v. United States*, 169 Fed. Cl. 436, 447–48 (2024); *BAE Sys. Norfolk Ship Repair, Inc. v. United States*, 163 Fed. Cl. 217, 227–28 (2022).

12

### D.    GAO's Advisory Opinion Is Unavailing.

GAO's advisory opinion cannot both be "instructive" and flawed.  (DOJ MJAR at 40.)  The Government does not dispute that GAO (a) misconstrued Table 14 as part of DLA's price realism analysis when instead it was included in a price reasonableness discussion and (b) misinterpreted the table as presenting lowest prices when instead it purported to calculate averages.[6]  Thus, while DOJ holds up GAO's analysis as "instructive," it all but concedes that GAO's analysis is incorrect.  In any event, there is also no dispute that the Court's focus is the rationality of *DLA's* reasoning— not GAO's or DOJ's—and DLA's reasoning is flawed for all the reasons set forth above.

## V.    THE  CORRECTIVE  ACTION  INVESTIGATION  AND  RESULTING RESPONSIBILITY DETERMINATION WERE NOT RATIONAL

### A.    A Contracting Officer's Responsibility Determination Is Not Immune from Review.

In defending the rationality of the contracting officer's responsibility determination, the Government relies heavily on the wide discretion afforded to contracting officers.  DOJ MJAR at 42 (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334– 35 (Fed. Cir. 2001)).  However, a responsibility determination is not immune from review, and this Court must still find it supported by a rational basis.

In *Impresa*, the Federal Circuit held that an award may be set aside if the contracting officer's responsibility determination lacks a rational basis.  *See Impresa*, 238 F.3d at 1332–33. There, the protester challenged the responsibility determination, claiming that the awardee "lacked the satisfactory record of integrity and business ethics" due to alleged involvement of a Mafia member, known to have engaged in bid rigging, intimidation, and other criminal activity, and that

---

[6] Even if Table 14 were relevant to price realism (it is not), the Government's attempt to explain the apparent mathematical errors in the table is unpersuasive because the Government's new calculations were not documented in the contemporaneous record.  (DOJ MJAR at 41 n. 12.)

the awardee "lied on the certification concerning debarment and civil and criminal proceedings."
*Id.* at 1329.  Given the serious offenses found by the Italian court, the Federal Circuit found "the government would be hard pressed to support a responsibility finding."  *Id.* at 1336.  The Federal Circuit found that the contracting officer's responsibility determination was not adequately documented and remanded for limited deposition of the contracting officer "to plac[e] on the record the basis for the contracting officer's responsibility determination" and evaluate whether it lacked a rational basis.  *Id.* at 1337–39.

This case likewise demands further review.  The contracting officer was presented with numerous red flags of misrepresentation and collusion: *e.g.*, inconsistent ▮▮▮▮▮▮▮, quid pro quo allegations, ▮▮▮▮▮ conspicuous proposal similarities and other identical proposal features, ▮▮▮▮▮▮▮▮▮, etc. Yet the contracting officer found Shanica and Hawax to be responsible bidders based on a perfunctory investigation which rested almost exclusively on self-serving denials from the companies under scrutiny.  The contracting officer's ordinary discretion does not act as a talisman to convert such disinterested inspection into rational conduct.

### B.  The Contracting Officer's Arbitrary Corrective Action Investigation Fails APA Review.

RCI's MJAR argues that (1) RCI repeatedly alerted DLA to serious irregularities and improper conduct by Shanica and Hawax; (2) DLA rebuffed these claims despite several corroborating similarities in the proposals; and (3) the contracting officer arbitrarily and capriciously conducted a cursory investigation that exhibited a lack of curiosity.

It is undisputed that DLA required RCI under the incumbent contract to disclose any evidence of potential fraud and wrongdoing.  The Government nonetheless dismisses the serious allegations in these required disclosures as statements that all incumbents "could be incentivized

14

to raise in nearly every procurement." (DOJ MJAR at 48.) The Government asserts that the scope

of its investigation should escape scrutiny because of the broad discretion enjoyed by prosecutors

in deciding whether and how to enforce laws. *See* DOJ MJAR at 47 (citing *Heckler v. Chaney*,

470 U.S. 821, 831 (1985)). (AR, Tab 58A at 1668.)

As DOJ recognizes, however, the "bid protest context differs from the agency enforcement

context addressed in *Heckler v. Chaney*." (DOJ MJAR at 47.) In *Heckler*, the Supreme Court

deemed prosecutorial decisions to fall among the rare category of agency actions that are immune

from APA review pursuant to 5 U.S.C. § 701(a)(2), because they are "committed to agency

discretion as a matter of law." *Heckler*, 470 U.S. at 832. The exception is extremely narrow:

> In order to give effect to the command that courts set aside agency action that is an
> abuse of discretion, and to honor the presumption of judicial review, we have read
> the § 701(a)(2) exception for action committed to agency discretion "quite
> narrowly, restricting it to 'those rare circumstances where the relevant statute is
> drawn so that a court would have no meaningful standard against which to judge
> the agency's exercise of discretion.'" And we have generally limited the exception
> to "certain categories of administrative decisions that courts traditionally have
> regarded as 'committed to agency discretion,'" such as a decision not to institute
> enforcement proceedings, or a decision by an intelligence agency to terminate an
> employee in the interest of national security.

*Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019).

Nothing at issue here is immune from review under § 701(a)(2). Congress has directed

this Court to apply the APA standard of review to protests, like RCI's, that challenge contract

awards and other violations of law in connection with a procurement. 28 U.S.C. § 1491(b)(4).

And the Federal Circuit itself has repeatedly demonstrated that the APA rational basis standard

must be used to review agency responsibility determinations and corrective action investigations—

even those involving alleged fraud and criminal violations. *See e.g. Impresa.*, 238 F.3d at 1332–

33; *Oracle America, Inc. v. United States*, 975 F.3d 1279, 1297 (Fed. Cir. 2020); *SAGAM Securite*

*Senegal v. United States*, No. 2021-2279, 2023 WL 6632915, at *6 (Fed. Cir. Oct. 12, 2023).

The DLA contracting officer here did not sit in the position of a federal prosecutor deciding whether to initiate criminal prosecution; rather, the contracting officer was responsible for conducting a lawful, rational procurement, which included the obligation to reach a rational responsibility determination and to conduct a rational corrective action investigation—all subject to rational basis review under the APA standard and FAR Subpart 9.1.

To survive that review, the contracting officer must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). Under this standard, agency action is generally considered arbitrary and capricious where:

> the agency has relied on factors which Congress has not intended it to consider, ***entirely failed to consider an important aspect of the problem***, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* (cleaned up, emphasis added). On this record, the contracting officer's responsibility determination and associated corrective action investigation cannot survive judicial review.

        **1.**    **The corrective action investigation was arbitrary under the *State Farm* standard because the contracting officer "entirely failed to consider an important aspect of the problem."**

The contracting officer's corrective action investigation was irrational and arbitrary because he conducted the review in a manner that would not reveal any wrongdoing and disregarded highly unusual similarities in the Shanica and Hawax proposals.

The contracting officer performed a rubber-stamp investigation: checking governmental databases to confirm that neither Shanica nor Hawax was under sanction or restriction, re-reviewing the proposals, and allowing Shanica and Hawax to reaffirm their prior

misrepresentations. None of these "investigative" steps could reasonably produce any evidence of wrongdoing for the simple reason that the presumptive awardees would not incriminate themselves and invite administrative and even criminal liability by confessing to egregious misrepresentations, collusive bidding, and sourcing Iranian fuel. By way of analogy, it is as if a customs official investigated a company for importing counterfeit goods by checking if there were previous convictions and asking whether the goods were counterfeit. Just as this approach would fail to uncover evidence like fabricated paperwork or financial relationships, a proper investigation here must look beyond self-serving denials and existing database records to uncover the fraud.

The investigation ignores an "important aspect of the problem." *State Farm*, 463 U.S. at 43. Shanica and Hawax will not self-incriminate and risk debarment from this and future fuel delivery procurements. The contracting officer's reliance on databases for only ***existing*** restrictions and the awardees' self-serving reaffirmations of their proposals cannot ferret out the deception apparent from the awardees' proposals and RCI's contractually mandated reports. DLA's perfunctory investigation, lacking all curiosity, was arbitrary and capricious. *See Oak Grove Techs., LLC v. United States*, 155 Fed. Cl. 84, 116 (2021) (criticizing investigation for "ostrich-like" lack of curiosity), *appeal docketed*, No. 22-1556 (Fed. Cir. Mar. 22, 2022).[7]

---

[7] DOJ argues that *Oak Grove* is inapplicable because it involves a potentially disqualifying organizational conflict of interest, whereas the present case involves "unsupported allegations of misconduct by [] competitors." (DOJ MJAR at 48.) To be certain, RCI's mandated reports to DLA also implicate the integrity of the procurement, and had the contracting officer conducted a rational investigation, Shanica and Hawax would have been found ineligible for award.

## 2. The contracting officer's reliance on self-serving statements to justify similarities was irrational.

The Government argues that the contracting officer investigated the "similarities between the proposals . . . and found that Hawax had provided a 'reasonable explanation' for any similarities." DOJ MJARECF No. 27 at 46. Specifically, Hawax stated:



AR, Tab 39 at 1312. For its part, Shanica merely stated that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ AR, Tab 38 at 1300. The responsibility determination concluded:

> . . . this is a reasonable explanation for similarities among the proposals. To the extent it does not explain every instance of similarity, the Contracting Officer's conclusion is that the similarity among proposals is not a sufficient basis on which to determine Hawax nonresponsible. Such similarity does not establish that something improper or illegal occurred.

AR, Tab 39 at 1312; *see also* DOJ MJAR at 46 n.14.

Lacking here is a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (quotation marks omitted). The contracting officer could not rationally conclude that these vague responses sufficiently quelled the concern. The fact that "▮ ▮▮▮▮▮▮▮▮▮▮" does not, on its own, explain how ▮ ▮▮▮▮▮▮▮▮▮▮, especially where Hawax purports to ▮▮▮▮▮▮▮▮▮▮."

(AR, Tab 39 at 1312; *compare* AR, Tab 19 at 542–51 *with* AR, Tab 21 at 836–46.)

18

The glaring extent of the proposal similarities undermines the contracting officer's conclusion. To illustrate, Shanica and Hawax each state ██████████████████████ ████████████████ but based on their ████████████████████████ (excerpted below), they propose ███████████████████████████████████ ████████████████. (AR, Tab 19 at 548–550, AR, Tab 21 at 843–845.)

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

(*Compare* AR, Tab 19 at 550 ("████████████████████████████████████") *with* AR, Tab 21 at 845 ███████████████████████████████████") (emphases added)). ████████████████████████████████████

██████████████████████ The proposals even copy the same typographical errors and awkward syntax. (*See* AR, Tab 19 at 551 ("██████████████████████████████ ████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████."); AR, Tab 21 at 846 (identical language).)  Extensive ████████ proposal language is a

glaring red flag,[8] and nothing that either Shanica or Hawax said in response to the contracting

officer's inquiry provided a sufficient basis to rationally explain ████████████████████.

    The Government similarly argues that the contracting officer reasoned that Hawax and

Shanica were not affiliates, but that even if they were, "affiliation would not make either offeror

nonresponsible."  (DOJ MJAR at 46 n. 14.)  But in response to the contracting officer's inquiry,

████████████████████████████████████████████████, meaning that

██████████████████████████████████████.  (AR,

Tab 38 at 1300; AR, Tab 39 at 1308–09.)  Making false statements to a contracting officer in an

official inquiry raises questions about a bidder's integrity and business ethics, FAR 9.104–1(c),

potentially constitutes a federal crime, 18 U.S.C. § 1001, and DLA would be hard pressed to

rationally find a contractor responsible that made misrepresentations during an investigation.

    For all the reasons set forth above, the contracting officer's investigation and responsibility

determination were irrational.

## VI.    PREJUDICE

    The Government attempts to invoke its flawed mootness argument to contend that RCI

cannot demonstrate prejudice with respect to the ██████ CLIN awards to ████████.  (DOJ MJAR at

51-52.)  Federal Circuit precedent squarely prohibits this leap.  *Tinton Falls Lodging Realty, LLC*

*v. United States*, 800 F.3d 1353, 1359–60 (Fed. Cir. 2015).  The record before the Court shows

---

[8] https://www.justice.gov/atr/red-flags-collusion (last accessed June 17, 2024) (instructing
agencies to "[c]loosely examine" proposals for similarities, explaining that the award "may be a
target of collusion if . . . Two or more proposals contain similar handwriting, typos, or
mathematical errors.")

████████████████████████████████████████

that RCI submitted a technically acceptable proposal for all CLINs, passing all required gating

criteria. Just because ████████████████████████████████ while this protest

is pending does not deprive RCI of a substantial chance of award in the event DLA is required to

reconsider its award ███████████. The arbitrary rules around authorization to make fuel

deliveries in Syria and Erbil at any given time mean that eligibility shifts with the sands from one

day to the next. That is particularly true given that many of RCI arguments bring Shanica's

eligibility to compete into doubt, leaving DLA with no acceptable offerors and requiring a re-

competition. In these circumstances, although there may be much speculation as to how the

procurement will ultimately unfold there is at least a realistic likelihood that ████████████

████████████████████████████████████ by the time the DLA takes

corrective action. (*See* Ex. 2.) Under Federal Circuit precedent, such a realistic possibility is all

RCI needs to establish a substantial chance of award and therefore prejudice. *Tinton Falls*, 800

F.3d at 1359–60 ("And although there is much speculation as to whether [the agency] would rebid

the solicitation on an unrestricted basis—thus allowing Tinton Falls to compete for the contract—

none of the parties disputes the Claims Court's finding that this is at least a realistic possibility.")

The Government's only other position on prejudice is to point out that for the Iraq CLINs,

Shanica is the lowest price offeror between Hawax and RCI. (DOJ MJAR at 51-52.) But RCI's

arguments directly challenge Shanica's eligibility, technical acceptability, price realism, integrity,

and responsibility on all CLINs.[9] If the Court remands this matter back to DLA on any single

issue RCI has raised, there is a substantial chance that when the dust settles RCI will be left as the

---

[9] As noted above, this interconnectedness between RCI's merits arguments and prejudice is also
why the Government's mootness argument does not limit the scope of issues before the Court.

████████████████████████████████████████

lowest price technically acceptable offeror for the Iraq and Syria CLINs.  Again, that is all that prejudice requires.  *See IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 89–90 (2022).

## VII.    REMEDY

The Government rehashes stale challenges to this Court's decades-long recognition that an offeror's lost opportunity to compete for a procurement can amount to irreparable harm sufficient to warrant injunctive relief.  (DOJ MJAR at 53 (citing *Monsanto Co. v. Geerton Seed Farms*, 561 U.S. 139, 157 (2010) and *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).)  This Court has already rejected this argument, recognizing that subject to the facts of each case, an offeror's lost opportunity to compete for award can qualify as irreparable harm warranting injunctive relief.  *See Caddell Constr. Co. v. United States*, 111 Fed. Cl. 49, 115–116 (2013).

The unique facts of this case weigh heavily in favor of an injunction. The record before this Court leaves—at best—serious questions as to whether offerors seeking taxpayer dollars through U.S. Government contracts submitted a host of false certifications and misrepresented their affiliation and compliance with U.S. sanctions against Iranian oil.  Not only is RCI irreparably harmed by the lost opportunity to fairly compete for the CLINs awarded to Hawax and Shanica, the integrity of the procurement system and the public's interest in a lawful procurement process are at stake.  Defendant asks this Court to prioritize DLA's desire to move past this protest over the public and national security interest of ensuring that U.S. tax dollars are not being used to subsidize Iranian fuel.  The equities lie in favor of *vacatur*, declaratory relief, and permanent injunctive relief to preserve the *status quo* pending any remand to DLA.

## VIII.  CONCLUSION

RCI respectfully requests this Court grant RCI's MJAR, deny the Government's Cross-MJAR, and issue an order providing the relief set forth in RCI's MJAR and herein.

Dated: June 17, 2024                           Respectfully submitted,

*Of Counsel*                                   /s/ *Moshe B. Broder*
                                               Moshe B. Broder (Counsel of Record)
David B. Robbins                               Jenner & Block LLP
Noah B. Bleicher                               1099 New York Avenue, NW, Suite 900
Nathaniel E. Castellano                        Washington, DC 20001-4412
Ginsey V. Kramarczyk                           (202) 637-6334
JENNER & BLOCK LLP                             mbroder@jenner.com

*Counsel to Repeat Consultants International, LLC*

23