REDACTED VERSION

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

24-619C
(Judge Davis)

REPEAT CONSULTANTS INTERNATIONAL, LLC,

Plaintiff,

v.

UNITED STATES,

Defendant,

## DEFENDANT'S REPLY IN SUPPORT OF CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL

STEVEN SOSKO
Senior Counsel
Defense Logistics Agency Counsel-Energy

RICHARD AVILES
Senior Counsel
Defense Logistics Agency Counsel-Energy

EMMA E. BOND
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 305-2034
Emma.E.Bond@usdoj.gov

June 27, 2024

*Attorneys for Defendant*

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

I.     The Facts On The Ground—Including RCI's Ability To Access Syria—Are
       Rapidly Changing ................................................................................................. 1

II.    DLA Rationally Relied On Shanica's And Hawax's Letters Of Commitment ...... 2

       A.     RCI Has Not Demonstrated Any Material Misrepresentation ................... 3

       B.     The Administrative Procedure Act Standard Of Review Applies ............. 5

       C.     DLA's Technical Assessment Is Rational ................................................. 8

       D.     RCI Is Not Entitled To Remand Or Discovery ........................................ 8

III.   DLA's Price Realism Analysis Is Rational ........................................................ 10

IV.    DLA Rationally Found Shanica And Hawax Responsible .................................. 13

V.     RCI Is Not Entitled To Injunctive Relief ........................................................... 17

CONCLUSION .............................................................................................................. 19

## TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*Advanced Data Concepts, Inc. v. United States*,
   216 F.3d 1054, 1057–58 (Fed. Cir. 2000) ................................................................6

*AgustaWestland N.A., Inc. v. United States*,
   880 F.3d 1326 (Fed. Cir. 2018) .............................................................................11

*Ala. Aircraft Industries, Inc.-Birmingham v. United States*,
   586 F.3d 1372 (Fed. Cir. 2009) .......................................................................13, 14

*Allied Tech. Grp., Inc. v. United States*,
   649 F.3d 1320 (Fed. Cir. 2011) .....................................................................passim

*Axiom Resource Management, Inc. v. United States* ,
   564 F.3d 1374 (Fed. Cir. 2009) .............................................................................11

*Bannum, Inc. v. United States*,
   404 F.3d 1346 (Fed. Cir. 2005) .........................................................................5, 11

*Bender Shipbuilding & Repair Co. v. United States*,
   297 F.3d 1358, 1362 (Fed. Cir. 2002) ...................................................................15

*Connected Glob. Sols., LLC v. United States*,
   159 Fed. Cl. 801 (2022) ..................................................................................7, 8, 11

*Connected Glob. Sols., LLC v. United States*,
   162 Fed. Cl. 720 (2022) ...........................................................................................5

*Cubbage v. Talbots, Inc.*,
   No. C09-911BHS, 2010 WL 2710628 (W.D. Wash. July 7, 2010) ........................5

*Dell Fed. Sys., L.P. v. United States*,
   906 F.3d 982, 991 (Fed. Cir. 2018) .........................................................................6

*DynCorp Int'l, LLC v. United States*,
   10 F.4th 1300 (Fed. Cir. 2021) .............................................................................10

*E.W. Bliss Co. v. United States*,
   77 F.3d 445 (Fed. Cir. 1996) ...................................................................................9

*Fernandez v. GS Aventura LLC*,
   No. 23-CV-24643-BB, 2024 WL 1044972 (S.D. Fla. Mar. 7, 2024) ......................5

*Golden IT, LLC v. United States,*
    157 Fed. Cl. 680 (2022)..................................................................................................8

*Harmonia Holdings Grp., LLC v. United States,*
    999 F.3d 1397 (Fed. Cir. 2021)...................................................................................18

*Health Net Fed. Services, LLC v. United States,*
    169 Fed. Cl. 738 (2024)..............................................................................................18

*Heckler v. Chaney,*
    470 U.S. 821 (1985)..............................................................................................18, 19

*Impresa Construzioni Geom. Domenico Garufi v. United States,*
    238 F.3d 1324 (Fed. Cir. 2001)...........................................................................passim

*John C. Grimberg Co. v. United States,*
    185 F.3d 1297 (Fed. Cir. 1999)..............................................................................17, 19

*Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.,*
    169 F.3d 747 (Fed. Cir. 1999) .....................................................................................6

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983).......................................................................................................14

*PAI Corp. v. United States,*
    614 F.3d 1347 (Fed. Cir. 2010)...................................................................................14

*Rice v. United States,*
    192 Ct. Cl. 903, 428 F.2d 1311 (1970)..........................................................................6

*Swift & Staley Inc. v. United States,*
    159 Fed. Cl. 731 (2022)..............................................................................................20

*Tyler Const. Group v. United States,*
    570 F.3d 1329 (Fed. Cir. 2009)..............................................................................14, 15

*United States v. Envistacom, LLC,* No. 1:22-CR-00197-VMC,
    2023 WL 1965277 (N.D. Ga. Feb. 13, 2023) ............................................................18

*Wheatland Tube Co. v. United States,*
    161 F.3d 1365 (Fed. Cir. 1998)...................................................................................10

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)...................................................................................................20, 21

## STATUTES

5 U.S.C. § 706...................................................................................................................8, 10

28 U.S.C. § 1491(b)....................................................................................................9

28 U.S.C. § 1491(b)(4)..........................................................................................8, 10

41 U.S.C. § 403(2).......................................................................................................19

## REGULATIONS

FAR 9.103....................................................................................................................17

FAR 9.105(c)...............................................................................................................19

FAR 9.105-1(c)............................................................................................................17

## OTHER AUTHORITIES

Exclusive, Black's Law Dictionary (11th ed. 2019)..................................................5, 6

## INTRODUCTION

The protest filed by plaintiff, Repeat Consultants International, LLC (RCI), should be denied.  DLA rationally awarded fuel delivery contracts to Shanica Company (Shanica) and Hawax Corporation (Hawax), for CLINs 1-13 and 15-17, respectively, when Shanica and Hawax were the lowest-priced, technically acceptable offerors for these respective line item numbers. Having failed to submit the lowest price for these CLINs, RCI now second-guesses DLA's determinations regarding technical acceptability, price realism, and responsibility—areas replete with deference to agency judgment.  There is no support for RCI's demands for further investigation into its own unsubstantiated allegations against Shanica and Hawax.  Procuring agencies are generally entitled to rely on offerors' certifications and proposals and are not required to undertake a fishing expedition to disprove unsupported allegations made by a competing offeror.  DLA rationally investigated RCI's allegations of wrongdoing and concluded they were unsupported.

I.      The Facts On The Ground—Including RCI's Ability To Access Syria—Are Rapidly Changing

In the motion to dismiss, the Government argued that RCI is unable to access Syria and, thus, is ineligible for any contract award to deliver fuel in Syria, mooting any dispute with respect to the award to Shanica for CLINs 1-13.  Def. Br. at 16-19, ECF No. 27.  The solicitation requires that offerors "[d]emonstrate and provide evidence of ability to gain access into [the] Syrian border."  Tab 1, AR 145, 148.  Although RCI's offer satisfied this threshold requirement, Tab 24, AR 882, RCI subsequently lost access to Syria after the case was filed.[1]  *See* Rodriguez

---

[1]  We did not file a standing challenge because RCI was able to access Syria at the time of filing this case, and only lost access after filing.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013) (explaining that both parties "had standing" to file claims and counterclaims at the outset

Decl. ¶ 8, ECF No. 27-1.  The declaration submitted by RCI in response did not dispute that RCI lacked access to Syria.  *See* ▮▮▮▮ Decl. ¶ 6, ECF No. 30-1.  In the days since RCI filed its reply, however, DLA has reported that the facts on the ground are changing regarding RCI's ability to access Syria.  Thus, it appears that RCI retains a concrete interest in the outcome of the case, and we withdraw the motion to dismiss on the ground of mootness at this time.

II.    <u>DLA Rationally Relied On Shanica's And Hawax's Letters Of Commitment</u>

A.    <u>RCI Has Not Demonstrated Any Material Misrepresentation</u>

RCI's challenges fail on the merits.  As its primary argument, RCI alleges a material misrepresentation in Shanica's and Hawax's proposals based on supply commitment letters ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  RCI Reply at 3-7, ECF No. 30.  However, RCI has failed to satisfy its burden, as the party alleging a material misrepresentation, to demonstrate that "the awardee[s] made a false statement."  RCI Br. at 16, ECF No. 24 (quoting *Connected Glob. Sols., LLC v. United States*, 162 Fed. Cl. 720, 744-45 (2022)).

RCI insists that the letters of commitment from the ▮▮▮▮▮▮▮▮ refineries to Shanica and Hawax are necessarily false because "it is impossible for two offerors to have ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮  RCI Reply at 4.  This argument rests on the unsupported premise that Shanica's and Hawax's letters of commitment from the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮  According to RCI, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮  RCI Reply at 7-8.  But the dictionary definition of "exclusive" cited by RCI does not support such a narrow meaning.  RCI Reply at 4 (quoting Exclusive, Black's Law

_____

of the case, but that the case became moot after the plaintiff dismissed its claim and issued a covenant not to sue).

Dictionary (11th ed. 2019)).  Instead, the term "exclusive" includes arrangements "[l]imited to a particular . . . *group*[.]"  *See* RCI Reply at 4 (quoting Exclusive, Black's Law Dictionary (11th ed. 2019)) (emphasis added).  That definition forecloses RCI's claim that it would be

.

Indeed, it is not unusual for the term "exclusive" to mean limited to a select group.  For example, one case discussed "an emailer to receive *exclusive* offers, benefits, invitations, and discounts for use at the Website or in Defendant's physical stores."  *Fernandez v. GS Aventura LLC*, No. 23-CV-24643-BB, 2024 WL 1044972, at *3 (S.D. Fla. Mar. 7, 2024) (emphasis added).  Another case discussed an "*exclusive* 20% savings pass and free shipping offer." *Cubbage v. Talbots, Inc*., No. C09-911BHS, 2010 WL 2710628, at *1 (W.D. Wash. July 7, 2010) (citation omitted) (emphasis added).  Such "exclusive" offers are consistent with the definition cited by RCI—limited to a *group*—but conflict with RCI's narrow interpretation that would define "exclusive" as limited to a single potential purchaser.  *See* RCI Reply at 4 (quoting Exclusive, Black's Law Dictionary (11th ed. 2019)).

Moreover, context is critical.[2]  The solicitation did not require the letter of commitment

, *see* Tab 1, AR 149, Tab 3, AR 155, and at least two other offerors—                    —submitted letters of commitment from the          Refinery similarly referencing                              Tab 88, AR 5278; Tab 85, AR 4791.  At least two

---

[2]  As the Federal Circuit has explained, when "interpret[ing] disputed contract terms, 'the *context* and intention of the contracting parties are more meaningful than the dictionary definition.'"  *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 752 (Fed. Cir. 1999) (quoting *Rice v. United States*, 192 Ct. Cl. 903, 428 F.2d 1311, 1314 (1970)) (emphasis added).  "Trade practice and custom illuminate the context for the parties' contract negotiations and agreements."  *Id.*



different refineries in the region—█████████—included "██████" language in their letters of commitment.  Tab 19, AR 524-525; Tab 21, AR 825-826; *see also* Tab 19, AR 527 (███████████████████.).  Each letter from ████████ to Shanica, Hawax, ████ █████ █████████████████████████████████████████████. Tab 88, AR 5278; Tab 85, AR 4791; Tab 19, AR 524-525; Tab 21, AR 825-826.  Context thus supports the conclusion that the letters of commitment referencing ████████████████████████████ ██████████████████.

In any event, the reference to ███████ is immaterial.  Even assuming for the sake of argument that the letters falsely promised to ████████████████ (they do not), RCI has not shown that would alter the only material requirement of the agreement—the commitment to supply fuel.  *See* Tab 1, AR 149 (solicitation requiring letters of commitment).  The refineries' promise to supply fuel was clearly set forth in the letters of commitment.  *See* Tab 19, AR 524-526; Tab 21, AR 825-827.  For example, the ████████ letter to Hawax included a separate paragraph committing to provide the necessary fuel supply:

Tab 21, AR 825.  RCI has not shown that this commitment would be void simply because a similar commitment was provided to others.  *See* RCI Reply at 8.

Apparently conceding that ███████ is not material, RCI argues that the letters of commitment as a whole are material.  RCI Reply at 5.  There is no dispute that the solicitation requires offerors to provide source letters of commitment.  Tab 1, AR 149.  But this misses the

4

point that even under RCI's proposed standard, the *alleged falsity itself* must be material. RCI

Br. at 16, ECF No. 24 (citing *Connected Glob. Sols., LLC v. United States*, 159 Fed. Cl. 801,

805–06 (2022)). In this case, the alleged falsity is the purported promise to ████████

████████—which is not required by the solicitation and is not material. *See* RCI Reply at 5; *see*

*also* Tab 1, AR 149. RCI has not shown that this mention of ████████—which also appears in

letters to at least two other offerors other than Shanica and Hawax, Tab 88, AR 5278, Tab 85,

AR 4791—means that the relevant refineries have not committed to supply the required fuel.

*See generally* RCI Reply at 5; Tab 88, AR 5278; Tab 85, AR 4791; Tab 19, AR 524-526; Tab

21, AR 825-827.

      RCI's argument also ignores that both Shanica and Hawax had other letters of

commitment for ████████████████. Even leaving aside the letters of commitment

from the ████████ refineries, Hawax still had ████████████████████

████████████████████ Tab 21, AR 827; Def. Br. at 20 n.6. Shanica, in turn,

had other letters of commitment from the ████████████████████████

████████████████████████████████████████████

████ *See* Tab 19, AR 523, 526-527; Def. Br. at 21 n.7. Thus, not only has RCI failed to

demonstrate any error in DLA's consideration of the letters of commitment from the ████████

████████, but it cannot show prejudice. *See Bannum, Inc. v. United States*, 404 F.3d 1346,

1358 (Fed. Cir. 2005) (citations omitted) (establishing prejudice requires "a 'substantial chance'"

that the plaintiff "would have received the contract award but for" the alleged errors).

      B.    <u>The Administrative Procedure Act Standard Of Review Applies</u>

      RCI wrongly claims that the Administrative Procedure Act standard of review does not

apply when reviewing its material misrepresentation claim. Reply Br. at 3-4 (citing *Connected*

*Glob. Sols., LLC*, 159 Fed. Cl. at 805–06) (citation omitted); *Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 700–01 (2022)).

All claims arising under this Court's bid protest jurisdiction shall be reviewed subject to the deferential Administrative Procedure Act (APA) standard of review. *See* 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706). "The § 706(2)(A) 'arbitrary and capricious' standard applies to bid protests under 28 U.S.C. § 1491(b)(4) reviewed in the absence of a hearing." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000). Indeed, the Federal Circuit has previously held that this Court erred as a matter of law when it deviated from the "rational basis" standard when reviewing corrective action. *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 991 (Fed. Cir. 2018). "The arbitrary and capricious standard applicable here is highly deferential." *Advanced Data Concepts*, 216 F.3d at 1057-1058.

Such deferential APA review is not inconsistent with judicial review of material misrepresentation claims. Although the Federal Circuit has previously entertained allegations of an offeror's material misrepresentations, its focus has remained on whether the *agency's* decision was rational, rather than allowing trial *de novo* on factual claims never previously considered by the agency. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1339 (Fed. Cir. 2001). In *Impresa*, the Federal Circuit explained that "[i]t is well-established that a contracting officer should consider disqualifying a proposed contractor if a material misrepresentation is made," and "assume[d] that the contracting officer considered" the relevant "certification and concluded that it was not misleading." *Id.* (citations omitted). Applying the APA standard of review, the Court explained that "[t]he question is *whether this was arbitrary*." *Id.* (emphasis added).

RCI's proposed departure from APA review makes particularly little sense in this case, in which RCI challenges an alleged contradiction between two offerors' proposals—both of which were already considered by DLA in evaluating technical acceptability.  *See* Tab 24, AR 884-885.  RCI offers no basis for departing from the general rule that matters such as "technical ratings" involve "the minutiae of the procurement process . . . that a court will not second guess." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (citations omitted).  Agencies are generally "entitled to rely" on an offeror's proposal and certifications in assessing technical acceptability, unless "a proposal, *on its face*, should lead an agency to the conclusion that an offeror could not and would not comply with the [applicable requirement]."  *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1330 (Fed. Cir. 2011) (citation omitted).  In determining whether a proposal "should lead an agency" to reject a proposal despite an offeror's certification, courts review the agency's decision deferentially under the APA standard of review.  *See id.* (holding "the Contracting Officer did not lack a rational basis to accept the proposal").

Yet, under RCI's view, the simple expedient of alleging a material misrepresentation in the awardee's certification would do away with the need for deference to the agency decisionmaker.  *See* RCI Reply at 3-4.  In this case, for example, RCI concedes that it relies "on the same facts" to support its arguments regarding material misrepresentation and technical acceptability—with the standard of review "shift[ing]" to the "objective falsity of the proposal" in the former and to the reasonableness of "DLA's evaluation" in the latter.  RCI Reply at 3-4, 7.  Yet, the standard of review for bid protests cannot be so easily cast aside.  *See* 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706).  The statutory standard of review for bid protests applies regardless of the plaintiff's artful pleading.  *See* 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706).

In any event, the Court need not resolve the correct standard for reviewing alleged

material misrepresentation in this case because RCI's claims fail under any standard.  Even

under its preferred standard, RCI has not proven falsity or materiality.  *See* Section II.A.

C.    DLA's Technical Assessment Is Rational

DLA's rationally found Shanica and Hawax to be technically acceptable, including on the

supply subfactor.  *See* Def. Br. at 19-21, 27.  It was rational for the contracting officer to rely on

Shanica's and Hawax's proposals "on [their] face" when those proposals contained the required

letters of commitment documenting access to fuel.  *Allied Tech.*, 649 F.3d at 1330; *see also* Tab

24, AR 884-885; Tab 19, AR 524-526; Tab 21, AR 825-827.

RCI argues the agency should have provided a "documented analysis" regarding the

allegedly inconsistent ███████████████, RCI Reply at 7, but DLA's path is reasonably

discernible, *see DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1313–14 (Fed. Cir. 2021)

(quoting *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369–70 (Fed. Cir. 1998)); Tab

24, AR 884-885.  "Generally, '[c]ontracting officers are not obligated by the APA to provide

written explanations for their actions.'"  *DynCorp*, 10 F.4th at 1313 (citing *Impresa*, 238 F.3d at

1337).  In this case, DLA found Shanica and Hawax to be technically acceptable in a written

analysis reflecting an understanding that all of the letters of commitment were genuine.  *See* Tab

24, AR 884-885 (stating that Hawax and Shanica "provided . . . letters of commitment").  DLA's

decision was rational and should be upheld.  *See* Def. Br. at 19-21.

D.    RCI Is Not Entitled To Remand Or Discovery

Having failed to meet its burden even under its preferred standard, RCI asks that the

Court "remand this procurement back to DLA" or (even though RCI never filed a motion for

discovery), "grant RCI's request for limited discovery."  RCI Reply at 6.  RCI is not entitled to either type of relief.

Regarding remand, RCI is not entitled to relief without showing prejudicial error in the agency's decision.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1351, 1353 (Fed. Cir. 2005).  RCI has not demonstrated any such error, and thus, is not entitled to remand.  *See* Sections II.A, II.C.

RCI's request for discovery to supplement the administrative record is no more persuasive.  RCI Reply at 6.  RCI admits that "discovery in this case would pose challenges given the international setting," but argues this should pose no barrier in authorizing discovery into its unsupported claims of material misrepresentation.  *See id.* (citing *Connected Glob.*, 159 Fed. Cl. at 806).  RCI's proposed standard for allowing discovery conflicts with the law governing supplementation of the administrative record.  The Federal Circuit has cautioned against considering information outside the administrative record that would "convert the arbitrary and capricious standard into effectively *de novo* review."  *AgustaWestland N.A., Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009)).  "[S]upplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review"—in other words, judicial review that is "consistent with the APA."  *Id.* (quoting *Axiom*, 564 F.3d at 1380).  RCI has made no effort to demonstrate a right to supplement under this

standard—whether with existing extra-record information or information that it hopes to glean in discovery.  Accordingly, RCI's request for discovery should be rejected.

III.    <u>DLA's Price Realism Analysis Is Rational</u>

DLA rationally found that Shanica's and Hawax's proposed prices are realistic.  *See* Def. Br. at 31-41.  RCI's challenges to that finding are unpersuasive.  *See* RCI Reply at 9-13.

With regard to Shanica's price, the contracting officer rationally found that Shanica's price was not substantially lower than RCI's price, which was the next lowest price.  Tab 37, AR 1293.  In reply, RCI concedes that price comparison can be an appropriate tool to assess price realism and that its own price was realistic.  RCI Reply at 9-10.  The only question, then, is whether DLA rationally found that Hawax's price was not substantially lower than RCI's—and, thus, also realistic.  On this issue, the contracting officer explained that Shanica's price of approximately $82.4 million was not significantly lower than RCI's price of approximately █████, and, thus, that Shanica's price was realistic.  Tab 37, AR 1293.  DLA rationally found that the difference of approximately $██ million was not a significant difference between prices of more than $██ million.  *Id.*  RCI provides no valid basis for second-guessing this reasonable exercise of judgment.

DLA also rationally concluded that Hawax's price was realistic.  Tab 37, AR 1295.  In reaching this finding, DLA (1) compared Hawax's total evaluated price with RCI's and Shanica's prices, finding that all three technically acceptable offerors were "reasonably close in price," and (2) analyzed Hawax's "differential/expenses," which left "an adequate margin, above

and beyond the estimated cost of fuel (the reference price), to cover the remaining costs, expenses, and profit to supply the required fuel." Tab 37, AR 1295.

Importantly, RCI fails to challenge DLA's finding that Hawax's price was "reasonably close" to *RCI's* own (presumably realistic) price. *See generally* RCI Reply at 11-12. This basis alone is sufficient to uphold DLA's finding that Hawax's price was realistic. As DLA explained, the presence of price competition and the "reasonably close" range between Hawax's, Shanica's, and RCI's prices "alone" showed that "Hawax's price is realistic and not too low." Tab 36, AR 1295.

RCI complains DLA should have compared *only* the price for "differential / expense"" rather than comparing the total evaluated prices—including the reference price estimating the market price for fuel. *See* RCI Reply at 12. Yet, in its reply, RCI fails to rebut the basic point that this is a fuel supply contract, so it was not irrational for DLA to include the price of fuel in assessing the realism of the offerors' prices. *See* Tab 37, AR 1293-1296; Def. Br. at 39.

RCI also argues that an agency must compare the price to some objective "metric, below which a price would be considered inadequate." RCI Reply at 11. This argument misunderstands the applicable standard. A price realism analysis need only be "consistent with the evaluation criteria set forth in the [solicitation]" and otherwise rational. *See Ala. Aircraft Industries, Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375–76 (Fed. Cir. 2009) (citation omitted). Thus, the applicable standard does not impose any categorical requirement for an independent cost or price estimate. *See id.* In any event, the record in this case *does* contain an independent cost estimate reflecting the reference prices for fuel. Tab 65, AR 1701-1708. The

contracting officer found that Hawax's prices included an adequate margin above and beyond the reference price for fuel. *See* Tab 37, AR 1295.[3]

Addressing the second part of DLA's analysis—Hawax's price differential—RCI claims that the contracting officer's analysis  was "inscrutable," challenging the "contracting officer's vague terminology such as 'modest range' or 'adequate margin.'" RCI Reply at 11 (quoting Tab 37, AR 1295). But these findings reflect the contracting officer's rational exercise of judgment, which is entitled to deference. *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (applying "highly deferential" APA review) (citation omitted). Using CLIN 15 as an example, the contracting officer found that Hawax's price per U.S. gallon included $▆▆▆▆ for differential / expenses "above and beyond what it reasonably expects to pay" for the relevant fuel. Tab 37, AR 1295. This differential was only "modestly lower" than the differential offered by Shanica (at $▆▆/U.S. gallon) and RCI (at $▆▆/U.S. gallon). Tab 37, AR 1295. The contracting officer determined that Hawax's lower differential price reflected "a modest range within which offerors may adjust their expenses/costs/profit for the ultimate price offer to the Government." Tab 37, AR 1295. Although RCI disagrees with this finding, it has not shown that DLA's reasoning "could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus.*, 586 F.3d at 1375 (quoting *Motor Vehicle Mfrs. Ass'n of U.S.,*

---

[3]  RCI is wrong in claiming that the Government offered a post-hoc rationale that the reference price merely estimates fuel prices and that the actual fuel prices may differ. *See* RCI Reply at 12 (citing, *e.g.*, *Rockwell Collins, Inc. v. United States*, 169 Fed. Cl. 436, 447–48 (2024)). The same reasoning is included in the price realism memorandum, in which the contracting officer explained that "the actual price an offeror pays for fuel from a given refinery may be more or less than the reference price." Tab 37, AR 1295 (emphasis added).

*Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (affirming a price realism

analysis).

"Effective contracting demands broad discretion." *Tyler Const. Group v. United States*,

570 F.3d 1329, 1334 (Fed. Cir. 2009). The contracting officer rationally found that Hawax's

price was reasonably close to RCI's and that there was only a "modest" difference in

differentials among all technically acceptable offerors. Tab 37, AR 1295. This judgment was

within the discretion and expertise of procurement officials.[4]

IV.    DLA Rationally Found Shanica And Hawax Responsible

RCI faces an uphill battle in challenging DLA's responsibility analysis in light of the

"wide discretion afforded to contracting officers" in assessing responsibility. *See* RCI Reply at

13 (citations omitted). Nonetheless, RCI argues that responsibility findings "are not immune"

from review, and argues that, like the facts in *Impresa*, this case "demands further review." RCI

Reply at 13-14 (citing *Impresa*, 238 F.3d at 1334-35).

Contrary to RCI's argument, this case is not like *Impresa*. In that case, the responsibility

determination was "not apparent from the record" and members of the awardee joint venture

were "at least previously . . . controlled by Carmelo La Mastra," who was *found by "an Italian*

*court"* to have "engaged in bid rigging" and to be "involved in a Mafia organization in

connection with previous contracts at the Sigonella base." *Impresa*, 238 F.3d at 1337 (emphasis

---

[4] RCI claims that the Government "all but concedes the GAO's analysis [regarding price
realism] is incorrect." RCI Reply at 13. That is not accurate. The GAO found that DLA's price
realism analysis was "reasonable and consistent with the terms of the RFP." Tab 110, AR 5571.
The crux of the GAO's reasoning was that it was "within DLA's discretion" to conduct the price
comparison reflected in the price realism memorandum. *Id.* (citing, *e.g.*, Tab 37, AR 1293-
1296). RCI ignores this correct analysis and instead critiques the GAO's discussion of a table of
prices, RCI Reply at 13, which, although part of the agency's price reasonableness analysis, also
reasonably supports the price realism of Shanica's and Hawax's prices, Tab 110, AR 5571 (citing
Tab 24, AR 893); *see also* Def. Br. at 40-41 & n.12.

added).  The Court remanded for "the contracting officer's responsibility determination" to be

placed on the record.  *Id.* at 1339.

In this case, by contrast, the record already contains "the basis for the contracting

officer's responsibility determination," *id.*, in two detailed memoranda documenting the

affirmative responsibility findings for Shanica and Hawax, Tab 38, AR 1297; Tab 39, AR 1305.

Despite previously raising a wide range of unsupported allegations against Hawax and Shanica,

RCI now focuses on alleged similarities in Hawax's and Shanica's proposals—characterized by

RCI as ███████████████████████████    *See, e.g.*, RCI Reply at 14, 18-19 (emphasis

omitted).  But the contracting officer acknowledged these similarities and found that Hawax

provided a reasonable explanation.  *See* Tab 39, AR 1312.  Specifically, Hawax explained that █

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████    Tab 39, AR 1312.[5]

In reply, RCI highlights certain "glaring" similarities in the proposals, including "██

██████████████████████████."  RCI Reply at 19.  But RCI does not show that

these similarities are at odds with the explanation that a ██████████████████

████████████████████████████████.  *See* Tab 39, AR 1312.

For example, RCI does not demonstrate that any of the overlapping documentation is proposal-

specific information that could not have been developed for prior proposals—consistent with

Hawax's statement that it "████████████████████████████████████████

_____

[5]  Contrary to RCI's argument (RCI Reply at 18-20), Shanica's failure to provide the
same specific response as Hawax does not imply wrongdoing.  The Procurement Integrity Act
prevented the contracting officer from disclosing specific information about other offers before
the award, *see* Def. Br. at 50, so it is not surprising that Shanica did not provide a more specific
response.

███████████

██████████████████████████████████.ˮ  *See* Tab 39, AR 1309, 1312

(emphases added).

RCI nonetheless contends that DLA should have conducted further investigation into the proposals, citing a website from the Department of Justice's Antitrust Division "explaining that the award 'may be a target of collusion if . . . [t]wo or more proposals contain similar handwriting, typos, or mathematical errors.'"  RCI Reply at 20 n.8 (citing https://www.justice.gov/atr/red-flags-collusion).  Yet, this argument misunderstands the distinction between a responsibility determination undertaken by procurement personnel before contract award, versus criminal investigations into alleged wrongdoing subject to the Government's enforcement authority.

Unlike criminal investigations, a responsibility determination relies on the contracting officer's business judgment at the time of award, based on information from sources such as SAM.gov, CPARS, and the prospective contractor.  *See* FAR 9.105-1(c); *see also* FAR 9.103 (stating "[n]o purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility").  Contracting officers are "generally given wide discretion . . . in determining the amount of information that is required to make a responsibility determination."  *Impresa*, 238 F.3d at 1334–35 (quoting *John C. Grimberg Co. v. United States*, 185 F.3d 1297, 1303 (Fed. Cir. 1999)) (internal citations omitted); *see also Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002) (agreeing that "[r]esponsibility decisions are largely a matter of judgment, and contracting officers are normally entitled to considerable discretion and deference in such matters").

In the context of a Government procurement, moreover, agencies are typically entitled to rely on offerors' certifications or proposals, with any failure to comply with a proposal

requirement enforced during contract administration.  *Allied Tech.*, 649 F.3d at 1330.

Contracting officers are generally "entitled to rely on a contractor's certifications" and have "no

obligation to undertake a fishing expedition to find documents disproving [the protester's]

assertion."  *Health Net Fed. Services, LLC v. United States*, 169 Fed. Cl. 738, 775 (2024) (citing

*Harmonia Holdings Grp., LLC v. United States*, 999 F.3d 1397, 1405-06 (Fed. Cir. 2021)).

      Separately, certain agencies have prosecution or other enforcement authority to pursue

various types of wrongdoing—as is the case with the authority of the Department of Justice's

Antitrust Division to investigate alleged collusion in procurement, cited by RCI.  *See* RCI Reply

at 20 n.8 (citation omitted).  "In addition to prosecution under the Sherman Act, 'collusion

among competitors may constitute violations of the mail or wire fraud statute, the false

statements statute, or other federal felony statutes, all of which the Antitrust Division

prosecutes.'"  *United States v. Envistacom, LLC*, No. 1:22-CR-00197-VMC, 2023 WL 1965277,

at *3 (N.D. Ga. Feb. 13, 2023) (citation omitted).  "[A]n agency's decision not to prosecute or

enforce, whether through civil or criminal process, is a decision generally committed to an

agency's absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (citations omitted).

      RCI claims that the contracting officer performed only a "rubber-stamp investigation,"

RCI Reply at 16, and argues that "it is as if a customs official investigated a company for

importing counterfeit goods by checking if there were previous convictions and asking whether

the goods were counterfeit," *id.* at 17.  But an investigation into Customs fraud is not analogous

to the procurement context, in which agencies are tasked with "acquiring property or services"

pursuant to defined procurement laws and regulations.  *See* 41 U.S.C. § 111 (defining

procurement for purposes of the Office of Procurement Policy).  Instead, an investigation into

Customs fraud is an example of an agency's investigative and enforcement authority that is committed to agency discretion by law. *Heckler*, 470 U.S. at 831.

This case, by contrast, involves DLA's rational finding of responsibility in the course of exercising its procurement authority. In making an affirmative finding of responsibility, the contracting officer conducted an inquiry into various allegations raised by RCI, re-evaluated proposals, and considered Shanica's and Hawax's responses to questions. *See, e.g.*, Tab 38, AR 1298-1299; Tab 39, AR 1306-1307; *see also* Def. Br. at 42-43. RCI's allegations were "insufficient to make any adverse [responsibility] finding against" Shanica and Hawax. Tab 38, AR 1304 n.2; Tab 39, AR 1313 n.3.

RCI argues that the contracting officer erred by only "checking governmental databases," "rereviewing the proposals," and "allowing Shanica and Hawax to reaffirm" prior statements. RCI Reply at 16-17. But each of these sources is listed as a type of information to be considered in making responsibility determinations. FAR 9.105-1(c). Further, because procuring agencies are generally entitled to rely on offerors' certifications, it was rational for the contracting officer to rely on statements from Shanica and Hawax in assessing their responsibility. *See Allied Tech.*, 649 F.3d at 1330. The contracting officer did not abuse his discretion "in determining the amount of information . . . required to make a responsibility determination." *See Impresa*, 238 F.3d at 1334–35 (quoting *John C. Grimberg Co.*, 185 F.3d at 1303) (internal citations omitted).[6]

---

[6] This responsibility finding did not foreclose investigations for other purposes. The contracting officer noted that "[t]he Department of Defense Criminal Investigative Service (DCIS) is performing their own investigation into Repeat Procurement Integrity Act allegations." Tab 38, AR 1304 n.2; Tab 39, AR 1313 n.3.

In sum, none of RCI's arguments demonstrates any error in DLA's responsibility determination for Shanica and Hawax.

V.    RCI Is Not Entitled To Injunctive Relief

Despite multiple bites at the apple before the GAO and this Court, RCI has failed to demonstrate any significant, prejudicial error in DLA's award of contracts to Shanica and Hawax. Thus, RCI is not entitled to any relief—much less the "extraordinary remedy" of a permanent injunction. *Swift & Staley Inc. v. United States*, 159 Fed. Cl. 731, 733 (2022) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008)).

Even if RCI could prevail on the merits in some respect, RCI has made no "clear showing" that it is entitled to a permanent injunction, based on the remaining equitable factors. *See id.* (quoting *Winter*, 555 U.S. at 22). RCI has not identified any case-specific reason why it would face irreparable harm absent an injunction, instead citing generic concerns about the "lost opportunity to compete for award." RCI Reply at 22 (citations omitted).

Meanwhile, the remaining factors—public interest and balancing of harms—strongly favor the Government. On the one hand, RCI cites its own allegations regarding "false certifications," "affiliation," and "compliance with U.S. sanctions against Iranian oil." RCI Reply at 22. But DLA found RCI's allegations on these issues were unsupported. *See, e.g.*, Def. Br. at 9, 22. As explained in the GAO's advisory opinion, the GAO likewise would have found that neither Shanica's nor Hawax's proposals supported RCI's allegations that the firms would supply fuel from Iran. Tab 110, AR 5569. RCI's unsupported allegations do not provide the requisite "clear showing" to support injunctive relief. *Winter*, 555 U.S. at 22.

On the other hand, RCI admits that "[t]his DLA procurement is for the delivery of fuel in some of the most challenging and unstable regions in the world." RCI Br. at 1, ECF No. 24. As

the contracting officer explained, DLA is responsible for supplying fuel to "ongoing military operations at locations in Syria and Erbil, Iraq." Rodriguez Decl. ¶ 11. RCI's proposed injunction "could inhibit DLA's ability to provide continued fuel support at those forward operating bases in support of U.S. forces and [Department of Defense] personnel." *See id.* "[T]he requested injunction would severely limit DLA's ability to adapt to any changes to contractor access and would pose a significant risk of disruption to the U.S. Government's fuel supply in this critical region." *Id.* ¶ 12. Thus, the equities weigh against any grant of injunctive relief.

<u>**CONCLUSION**</u>

For these reasons, we respectfully request that the Court deny RCI's motion for judgment on the administrative record and grant the Government's cross motion.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL

STEVEN SOSKO
Senior Counsel
Defense Logistics Agency Counsel-
Energy

RICHARD AVILES
Senior Counsel
Defense Logistics Agency Counsel-
Energy

Dated:  June 27, 2024

s/Emma E. Bond
EMMA E. BOND
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:    (202) 305-2034
Email:        Emma.E.Bond@usdoj.gov

Attorneys for Defendant